UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| BLAW-KNOX CORPORATION | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GENCOR INDUSTRIES, INC. | ) | No. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| THE G.W. VAN KEPPEL COMPANY, | ) | |
| | | |
| Defendant. | | |

_____

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs Blaw-Knox Corporation ("Blaw-Knox") and Gencor Industries, Inc. ("Gencor"), by counsel, respectfully state as follows for their complaint against Defendant The G.W. Van Keppel Company ("GWVK").

### NATURE OF THE ACTION

1.     By way of this declaratory judgment action, Blaw-Knox and its parent company, Gencor, seek a judicial determination whether a manufacturer can be forced against its will to sell its products and replacement parts for such products to an independent dealer with which the manufacturer has never had any contractual or other business relationship. In this case, the dealer—Defendant GWVK—claims the right to purchase, resell, and repair

road paving equipment and replacement parts for such equipment manufactured by Blaw-Knox ("BLAW-KNOX® Pavers") that are identified with the federally registered BLAW-KNOX® trademark (the "BLAW-KNOX® Mark"). To engage in these activities, GWVK would need to be licensed to use the BLAW-KNOX® Mark. As the trademark owner, Blaw-Knox alone has the right to decide whether to license the BLAW-KNOX® Mark at all and—if so— to whom. Blaw-Knox would be well within its rights not to license *anyone* to sell and service equipment and parts identified with the BLAW-KNOX® Mark. Instead, BLAW-KNOX could sell and service BLAW-KNOX® Pavers itself. In fact, the direct sales and service model is the preferred method of distribution used by several other equipment manufacturing companies that Gencor owns. Alternatively, rather than engage in direct distribution, Blaw-Knox could—in all or part of the U.S.—appoint independent dealers of its own choosing. GWVK, however, contends otherwise. In fact, GWVK has threatened Blaw-Knox's parent company, Gencor, with litigation unless GWVK is recognized as the exclusive authorized dealer of BLAW-KNOX® Pavers and replacement parts in Kansas, Missouri, and Oklahoma.

2. The basis upon which GWVK claims to be an authorized BLAW-KNOX® dealer is a theory of successor liability. By way of background, the BLAW-KNOX® Mark has been used in interstate commerce for more than 100 years, since 1917, and was first used to identify road paving equipment

2

beginning in 1929. Between 1929 and 2020, five other companies manufactured BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark. Plaintiff Blaw-Knox became the sixth company to manufacture BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark pursuant to a July 30, 2020 Asset Purchase Agreement (the "APA") in which the seller was Volvo Construction Equipment North America, LLC ("Volvo").[1]

3.    Before selling the BLAW-KNOX® Mark and related manufacturing assets to Blaw-Knox, Volvo had previously appointed GWVK as an authorized BLAW-KNOX® Paver dealer in Kansas, Missouri, and Oklahoma pursuant to dealer agreements (the "Volvo CE Dealer Agreements") whereby GWVK was also appointed as an authorized dealer of certain "Volvo Products." GWVK's Volvo CE Dealer Agreements were ***not*** among the assets transferred to Blaw-Knox pursuant to the APA. By correspondence dated July 31, 2020, Volvo exercised its contractual right to remove BLAW-KNOX® Pavers from the scope of the "Volvo Products" covered by GWVK's Volvo CE Dealer Agreements.[2]

---

[1] The July 30, 2020 APA, including the First Amendment thereto dated September 28, 2020, is attached as **Exhibit A**. The September 28, 2020 First Amendment substituted Blaw-Knox Corporation, a Florida corporation, as the "Purchaser" in the APA for BK Acquisition Corporation, a name that ultimately was not available in Florida as previously anticipated.

[2] A copy of this July 31, 2020 correspondence is attached as **Exhibit B.**

3

4.     The foregoing facts have not stopped GWVK from contending that Gencor[3] is required to honor Volvo's contractual obligations under the Volvo CE Dealer Agreements as if Gencor had been a party to those agreements and as if the "Volvo Products" that they covered still included pavers identified with the BLAW-KNOX® Mark.  Gencor and Blaw-Knox therefore seek a judicial determination that neither one of them owes GWVK the contractual obligations that it claims.  Without such a declaratory judgment, Gencor and Blaw-Knox face the potential for a multiplicity of litigation against GWVK in several states and against other dealers that previously sold pavers identified with the BLAW-KNOX® Mark pursuant to dealer agreements with Volvo.

5.     The litigation that GWVK has threatened arises out of three Volvo CE Dealer Agreements dated February 8, 2010.[4]  Each of the Volvo CE Dealer Agreements uses the defined term "Volvo" to refer to Volvo Construction Equipment North America, Inc. (later changed to Volvo Construction Equipment North America, LLC) "on behalf of itself and on behalf of its Affiliate," Volvo Road Machinery, Inc.  The term "Dealer" in each agreement is

---

[3] GWVK is apparently laboring under this misapprehension that Gencor rather than Blaw-Knox was a party to the APA and that Gencor rather than Blaw-Knox is therefore the owner of the BLAW-KNOX® Mark.

[4] Copies of the Volvo CE Dealer Agreements between GWVK and Volvo for Kansas, Missouri, and Oklahoma are attached as **Exhibit C**, **Exhibit D**, and **Exhibit E,** respectively.

4

defined as G.W. Van Keppel Company, a corporation organized under the laws of the State of Missouri. The Volvo CE Dealer Agreements are virtually identical except for the "Territory" in which the "Dealer" is appointed as the exclusive authorized dealer of "Volvo Products"—including BLAW-KNOX® Pavers. One of the contracts grants such rights in Kansas, one in Missouri, and one in Oklahoma. The "Trademarks" that Section 13 of the Volvo CE Dealer Agreements licensed GWVK to use consisted of those "designated by Volvo as trademark identification for Volvo Products," specifically including "Blaw-Knox and the Blaw-Knox diamond logo." Section 16.1 of each of the Volvo CE Dealer Agreements expressly permitted Volvo to discontinue any of the "Volvo Products" (including parts), in which case "Volvo shall have no obligation to offer Dealer a replacement product or to compensate Dealer with respect to product discontinuation."

6.      In anticipation of the July 30, 2020 APA whereby Volvo sold the BLAW-KNOX® Mark and related assets to Blaw-Knox, Volvo exercised its contractual right to discontinue BLAW-KNOX® Pavers from the "Volvo Products" covered by the Volvo CE Dealer Agreements. As far as Gencor and Blaw-Knox are aware, GWVK never contended that—by discontinuing BLAW-KNOX® Pavers—Volvo wrongfully terminated or otherwise breached GWVK's Volvo CE Dealer Agreements or violated any state law. GWVK has since contended, however, that **Gencor's** failure to perform Volvo's obligations to

5

GWVK under the Volvo CE Dealer Agreements constitutes an unlawful "cancellation" of the Volvo CE Dealer Agreements in violation of the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.* (the "Kansas Act"), the Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.* (the "Missouri Act"), and the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.* (the "Oklahoma Act"). In fact, however, neither Gencor (the entity with which GWVK has threatened litigation) nor Blaw-Knox (the actual "Purchaser" of the BLAW-KNOX® Mark and related assets under the APA) could have "cancelled" GWVK's Volvo CE Dealer Agreements because neither one was ever a party.

7.    After consummation of the transaction contemplated by the July 30, 2020 APA, Blaw-Knox offered certain dealers the opportunity to sell BLAW-KNOX® Pavers pursuant to its standard form BLAW-KNOX® Authorized Sales Agreement, a copy of which is attached as **Exhibit F**. Blaw-Knox also offered certain dealers the opportunity to service BLAW-KNOX® Pavers and to sell genuine replacement parts for BLAW-KNOX® Pavers pursuant to its standard form BLAW-KNOX® Authorized Service Agreement, a copy of which is attached is **Exhibit G**. Not every dealer that has been offered a BLAW-KNOX® Authorized Sales Agreement and/or a BLAW-KNOX® Authorized Service Agreement has accepted Blaw-Knox's offer.

6

8.    Defendant GWVK was ***not*** among the dealers to which Blaw-Knox offered a BLAW-KNOX® Authorized Sales or Service Agreement. Nor does Blaw-Knox have any intention of extending such an offer to GWVK. In Blaw-Knox's business judgment, GWVK is not a dealer to which Blaw-Knox wants to license the BLAW-KNOX® Mark. Nor is GWVK a dealer that Blaw-Knox wants to appoint as being authorized to sell BLAW-KNOX® Pavers and replacement parts and to service BLAW-KNOX® Pavers.

9.    Under the circumstances, Blaw-Knox has no contractual obligation to supply GWVK with BLAW-KNOX® Pavers and replacement parts. Nor does Blaw-Knox have any contractual obligation to permit GWVK to hold itself out to the public as being an authorized service center for BLAW-KNOX® Pavers. By not offering GWVK the BLAW-KNOX® Authorized Sales Agreement, the BLAW-KNOX® Authorized Service Agreement, or both, neither Blaw-Knox nor Gencor violated any potentially applicable state statute—including the Kansas, Missouri, and Oklahoma statutes that GWVK has cited in its threats of litigation.

10.    To be an authorized dealer of BLAW-KNOX® Pavers, GWVK needs a license from the current owner of the BLAW-KNOX® Mark, *i.e.,* Blaw-Knox. In the words of one of the leading authorities on federal trademark law, a trademark "license [is] needed when the manufacturer of branded goods permits a dealer to hold itself out as an 'authorized' dealer, repair outlet, and

7

the like." J. Thomas McCarthy, 3 McCarthy on Trademarks and Unfair Competition § 18:41 (4th ed). If the Kansas Act, the Missouri Act, or the Oklahoma Act purported to force Blaw-Knox to license the BLAW-KNOX® Mark to GWVK, it would represent impermissible "interference by State . . . legislation" (15 U.S.C. § 1127) with the rights afforded owners of federally registered trademarks under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1101 *et seq.* By virtue of the Supremacy Clause and the Lanham Act, such a provision of state law would be preempted.

11. Accordingly, Blaw-Knox and Gencor seek a declaratory judgment—pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Lanham Act, 15 U.S.C. § 1121, and Rule 57 of the Federal Rules of Civil Procedure—that neither entity has a contractual or statutory obligation to sell BLAW-KNOX® Pavers and related parts and services to GWVK. As a result, their refusal to do so does not breach the Volvo CE Dealer Agreements or an implied duty of good faith and fair dealing and does not violate the Kansas Act, the Missouri Act, or the Oklahoma Act. The declaratory judgment sought by Blaw-Knox and Gencor would clarify their rights and obligations with respect to GWVK. It would also help avoid a multiplicity of litigation related to the APA and the Volvo CE Dealer Agreements against GWVK and, potentially, other dealers of Volvo Products appointed by Volvo to which Blaw-Knox did

8

not offer a BLAW-KNOX® Authorized Sales Agreement and/or BLAW-KNOX® Authorized Service Agreement.

## PARTIES

12.     Plaintiff Gencor Industries, Inc. is a Delaware corporation with its principal place of business at 5201 Orange Blossom Trail, Orlando, Florida 32810.  Gencor is a leading manufacturer of, among other things, asphalt plants, soil remediation plants, combustion systems, heat transfer systems, and other equipment used in the road and highway construction industries.

13.     Plaintiff Blaw-Knox Corporation is a Florida corporation with its principal place of business at 5201 Orange Blossom Trail, Orlando, Florida 32810.  Blaw-Knox is a leading manufacturer and supplier of road and highway asphalt paving construction equipment and related parts and services.

14.     Defendant The G.W. Van Keppel Company is a Missouri corporation with its principal place of business at 5800 E. Bannister Road, Kansas City, Missouri 64134.  GWVK operates as a reseller of certain equipment and services for the construction, material handling, trench safety, and quarry-supply industries from various branch locations in Arkansas, Illinois, Iowa, Kansas, Missouri, Nebraska, Oklahoma, Texas, and Wisconsin.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction over this declaratory judgment action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 2201

because Blaw-Knox and Gencor seek a declaration of their rights and obligations vis-à-vis GWVK under the federal trademark statute, the Lanham Act, with respect to the BLAW-KNOX® Mark. Even without federal question jurisdiction, this Court has diversity jurisdiction over this declaratory judgment action. Blaw-Knox and Gencor, both of which are citizens of Florida, seek a declaratory judgment against GWVK, which is a citizen of Missouri, that neither Blaw-Knox nor Gencor is a party to or otherwise obligated under GWVK's Volvo CE Dealer Agreements and that neither Blaw-Knox nor Gencor has violated the Kansas Act, the Missouri Act, and the Oklahoma Act as GWVK alleges. There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of costs and interests.

16.    This Court has personal jurisdiction over GWVK because GWVK, through its counsel, has repeatedly directed correspondence to Gencor and Blaw-Knox (either by registered agent or through counsel) in the Middle District of Florida, Orlando Division, demanding that Gencor and Blaw-Knox comply with contractual arrangements to which neither is a party and further threatening a multiplicity of litigation against Gencor and Blaw-Knox unless Gencor and Blaw-Knox accede to GWVK's attempt to strong-arm Gencor and Blaw-Knox into licensing the BLAW-KNOX® Mark to GWVK. This correspondence from GWVK's counsel seeks to—in effect—make GWVK a

10

party to the BLAW-KNOX® Authorized Sales and Service Agreements.  The Standard Terms and Conditions for these agreements, in Section 22.1 thereof, provide that they are governed by Florida law.  Section 22.2 of the Standard Terms and Conditions also provides:  "Company and Dealer hereby agree to submit to the exclusive jurisdiction of the courts of the State of Florida, Ninth Judicial Circuit Court, or the United States District Court for the Middle District of Florida."  By way of this correspondence, GWVK has unilaterally and purposefully created contacts with the State of Florida with the intent to harm Plaintiffs.  In doing so, GWVK created sufficient minimum contacts with the State of Florida such that the maintenance of this suit will not offend traditional notions of fair play and substantial justice.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that form the basis of this action occurred in the Middle District of Florida, Orlando Division.  These events include Blaw-Knox's negotiation and execution of the APA, which resulted in the transfer to Blaw-Knox of ownership of the BLAW-KNOX® Marks.  Venue is also proper in this Court because Blaw-Knox and Gencor each has its principal place and transacts business in the Middle District of Florida, Orlando Division.  In addition, the BLAW-KNOX® Authorized Sales and Service Agreements to which GWVK seeks to become a party provide for dispute resolution in the Middle District of Florida.

## FACTUAL BACKGROUND

### (The History of the BLAW-KNOX® Mark Dating Back to 1917)

18.    The history of the BLAW-KNOX® Mark dates back more than a century.  In 1906, Jacob B. Blaw created the Blaw Collapsible Steel Centering Company, located in New Jersey, to manufacturer his patented steel form used to construct improved concrete circular tubes for sewers and tunnels.  In 1909, Luther Knox created the Knox Pressed and Welded Steel Company to manufacture steel products used in high temperature applications. In July 1917, the firms merged to form the Blaw-Knox Company.  The word mark BLAW-KNOX® was first used in interstate commerce in 1917, according to U.S. Trademark Serial No. 7234235/Registration No. 931,579, a copy of which is attached as **Exhibit H.**  This registration identifies the original registrant as the Blaw-Knox Company and the current owner as Plaintiff Blaw-Knox.

19.    In 1927, the Blaw-Knox Company began manufacturing radio towers, many of which were built using a distinctive "diamond cantilever" design, an example of which is depicted below:



A stylized variant of this diamond cantilever design later became the basis for the BLAW-KNOX® design and word mark, which was first used in interstate commerce in 1957, according to U.S. Trademark Serial No. 73693159/Registration No. 1,515,147, a copy of which is attached as **Exhibit I**. This registration identifies the original registrant as Blaw-Knox Construction Equipment Corporation and the current owner as Plaintiff Blaw-Knox.

20. In 1929, the Blaw-Knox Company purchased the A. W. French & Company, a manufacturer of paving equipment that produced concrete roads. Shortly thereafter, the Blaw-Knox Company began making highway pavers used in flexible asphalt paving. The BLAW-KNOX® Pavers that Plaintiff Blaw-Knox currently sells under the BLAW-KNOX® Mark include more recent designs of highway pavers used in flexible asphalt paving.

13

21.    In May 1968, the Blaw-Knox Company was purchased by White Consolidated Industries ("WCI").  Thereafter BLAW-KNOX® Pavers were manufactured by a WCI subsidiary known as Blaw-Knox Construction Equipment Corporation.

22.    In April 1994, WCI sold the entity then known as Blaw-Knox Construction Equipment Corporation to Clark Equipment Company ("Clark"). The following year, in 1995, Clark sold the BLAW-KNOX® Pavers business unit to Ingersoll Rand, Inc. ("Ingersoll Rand") as part of an acquisition by Ingersoll Rand of all of Clark's operations.  After divesting certain overseas highway paving operations, Ingersoll Rand kept the North American BLAW-KNOX® Pavers operations as a stand-alone business unit in its pre-existing road construction equipment division.

23.    In February 2007, Ingersoll Rand sold its road construction equipment division—including the BLAW-KNOX® Pavers business unit and the BLAW-KNOX® Mark—to the parent company of Volvo.  Thereafter, Volvo sold BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark until July 30, 2020, the effective date of the APA between Volvo and Plaintiff Blaw-Knox.

### (The July 30, 2020 Asset Purchase Agreement)

24.    On July 30, 2020, BK Acquisition Corporation and Volvo Construction Equipment North America, LLC entered into the APA, which was

14

amended on September 28, 2020 to substitute Plaintiff Blaw-Knox for BK Acquisition Corporation. (Ex. A.)

25. Pursuant to Section 1.1 of the APA, Blaw-Knox purchased from Volvo certain "Acquired Assets," defined to include the following:

a. "all Production Inventory, excluding Retained Inventory, existing as of the Closing (the 'Purchased Production Inventory')"[5];

b. "all Aftermarket Inventory (i) of a type (based on part number) which [Volvo] has made sales of a quantity between January 1, 2017 and the Closing; (ii) which [Volvo] has received from a supplier after January 1, 2019; (iii) which is to be used solely for the 5110 and 5170 pavers; or (iv) identified on Schedule 1.1(b) (collectively, the 'Purchased Aftermarket Inventory'), in each case to the extent existing as of the Closing";[6]

---

[5] The APA defines "Production Inventory" to mean "all undamaged raw materials, component parts, production and non-production supplies and other inventory that is used in the Business and that is located at [Volvo's] warehouse site in Shippensburg, Pennsylvania, other than Aftermarket Inventory." (*Id.*, § 9.1.) The APA defines "Retained Inventory" to mean "work in process, raw materials, component parts, production and non-production supplies and other inventory that [Volvo] needs in order to complete asphalt pavers that [Volvo] is in the process of manufacturing as of the date of this Agreement, ***and finished asphalt pavers and asphalt pavers that are in the process of being manufactured by [Volvo] as of the date of this Agreement***." (*Id.* (emphasis added).)

[6] The APA defines "Aftermarket Inventory" to mean "all undamaged raw materials, component parts, production and non-production supplies and other

c.    "all fixed assets utilized exclusively in the assembly and production of asphalt pavers (including all fixed assets listed on Schedule 1.1(c)), other than cranes, fluid handling systems, and other fixed assets that are permanently affixed to [Volvo's] production building in Shippensburg, Pennsylvania";

d.    "fabrication tooling and fixtures utilized in the fabrication, assembly and production of asphalt pavers, including all tooling and fixtures listed on Schedule 1.1(d)";

e.    "paver training aids related to the Business, including all training aids listed on Schedule 1.1(e)";[7]

f.    "the Blaw-Knox brand name and all related trademarks, logos and other intellectual property";

g.    "all documents, photos and materials of a historical nature relating to the Business or its products that [Volvo] has in its archives, records or files";

---

inventory held for the purpose of maintaining, repairing or servicing asphalt pavers manufactured in the Business and that is located at [Volvo's] warehouse sites in Columbus, Ohio or Byhalia, Mississippi." (*Id.*, § 9.1.)

[7] The APA defines "Business" to mean Volvo's "business of designing, manufacturing, assembling, marketing, distributing and selling asphalt pavers, paver equipment and related parts and services under the Blaw-Knox brand name." (*Id.*, § 9.1.)

16

h.     "the following documentation relating exclusively to the Business in electronic format: (i) Road Institute training materials; (ii) marketing materials; (iii) engineering documentation; (iv) supplier information; (v) manufacturing information from [Volvo's] ERP system; (vi) aftermarket information, including historical usage; and (vii) parts, operations, and service manuals"; and

i.     "the prototype units for asphalt pavers manufactured by the Business that are set forth on Schedule 1.1(i)."

(Ex. A, § 1.1.)

26.     The APA also expressly excluded specific rights, properties, assets, and obligations from the "Acquired Assets" delineated in Section 1.1 and listed above "from the purchase and sale contemplated by [the APA]." (*See id.*, § 1.2.) GWVK's Volvo CE Dealer Agreements were among these "Excluded Assets." Section 1.2 of the APA defined these "Excluded Assets" to include:

a.     "all Aftermarket Inventory other than the Purchased Aftermarket Inventory";

b.     "***all Retained Inventory***";

c.     "the rights of [Volvo] under or pursuant to this Agreement and the other Transaction Documents";

d.     "all fixed assets not utilized exclusively in the assembly and production of asphalt pavers";

     e.    "all cranes utilized in the assembly and production of asphalt pavers";

     f.    "all fluid handling systems utilized in the assembly and production of asphalt pavers";

     g.    "all fixed assets utilized in the assembly and production of asphalt pavers that are permanently affixed to [Volvo's] production building in Shippensburg, Pennsylvania";

     h.    "***all finished asphalt pavers and all asphalt pavers that are in the process of being manufactured by [Volvo]***";

     i.    "all marketing stock, which, for the avoidance of doubt, means finished asphalt pavers used by [Volvo] for marketing purposes";

     j.    "all of the intellectual property related to [Volvo's] Pave Assist, Active Care and Care Track electronic systems";

     k.    "all Contracts to which [Volvo] or any of its Affiliates is a party";[8]

     l.    "all of [Volvo's] insurance policies";

     m.    "all Tax refunds, credits or similar benefits relating to the Business or the Acquired Assets for Pre-Closing Tax Periods and Tax refunds of [Volvo]";

---

[8] The APA defines "Contract" to mean "any legally-binding oral or written contract, agreement, instrument, or other document." (*Id.*, § 9.1.)

n.    "all Tax Returns of [Volvo]";

o.    "the cash of [Volvo] and its Affiliates, including cash related to the Business and the Acquired Assets for any period prior to the Closing, and all bank accounts of [Volvo]";

p.    "the company seals, Organizational Documents, minute books, shareholder books, books of account, taxpayer and other indemnification numbers, securities transfer books, blank securities certificates, and other documents relating to the organization, maintenance, and existence of [Volvo] as a business entity";

q.    "all rights and claims to the extent related to any of the foregoing or any Excluded Liability";[9] and

r.    "the assets identified on <u>Schedule 1.2(r)</u>."

(*See id.*, § 1.2 (emphasis added).)

27.    Pursuant to Section 5.1(c) of the APA, Volvo agreed to indemnify Blaw-Knox for third-party claims that arise out of or relate to "Excluded Liabilities" under the APA.  (*See id.*, § 5.1(c).)

---

[9] The APA defines "Excluded Liabilities" to include "all Liabilities relating to Excluded Assets."  (*See id.*, § 1.3(c).)  The APA also defines "Excluded Liabilities" to include "all Liabilities relating to the design, manufacture, assembly, marketing, distribution or sale of any products by [Volvo] or any of its Affiliates and any warranty claims (i) existing as of the Closing Date or (ii) arising following the Closing that relate to any product sold by [Volvo] or any of its Affiliates prior to the Closing Date."  (*See id.*, § 1.3(d).)

28.   Pursuant to Section 5.1(b) of the APA, Volvo also agreed to indemnify Blaw-Knox for third-party claims based upon Volvo's "failure . . . to perform any covenant or agreement to be performed by it under this Agreement." This indemnity obligation includes Volvo's promise provided in Section 6.7(a) of the APA that "[w]ith respect to any warranty claim that arises following the Closing that relates to any asphalt paver sold by [Volvo] prior to the Closing Date, [Volvo] shall control and satisfy such warranty claims in a manner that is consistent with [Volvo's] past practices." (*Id.*, §§ 5.1(b), 6.7(a).) To the extent that a BLAW-KNOX® Paver dealer needs parts to perform warranty service for BLAW-KNOX® Pavers sold by Volvo before the closing date of the APA, the provision of such parts is thus the responsibility of Volvo.

29.   The asset purchase described in the APA closed on October 1, 2020.

30.   As the terms of the APA make clear, Blaw-Knox purchased only a discrete portion of the following from Volvo: raw materials; component parts; manufacturing supplies; fixed assembly and production assets; fabrication tooling and fixtures; training, manufacturing, and marketing collateral materials; product prototypes; and the BLAW-KNOX® brand name and related trademarks, logos, and intellectual property. (*See id.*, § 1.1.)

31.   The provisions of the APA establish that there is no merit to GWVK's contention that either Blaw-Knox or Gencor (which was not a party to the APA) acquired a substantial part of Volvo's assets, more than fifty

20

percent of Volvo's stock, all or substantially all of Volvo's inventory, a division of Volvo, or an entire product line of Volvo's. Nor can GWVK legitimately contend that either Plaintiff qualifies as a surviving corporation of Volvo resulting from a merger, liquidation, or reorganization.

**(Blaw-Knox's Post-APA Business, Authorized Dealer Network, and Decision Not to License the BLAW-KNOX® Mark to GWVK)**

32.    Shortly after the October 1, 2020 closing, Blaw-Knox began manufacturing and selling its own asphalt paving construction equipment and related parts and services under the BLAW-KNOX® Mark. None of the asphalt paving construction equipment that Blaw-Knox sold after the acquisition was acquired from Volvo pursuant to the APA. Rather, all of the BLAW-KNOX® Pavers and replacement parts that Blaw-Knox has sold (and continues to sell) since the acquisition have been manufactured by Blaw-Knox.

33.    Because Blaw-Knox did not acquire Volvo's pre-existing dealer agreements pursuant to the APA, which expressly excluded them in Section 1.2, Blaw-Knox elected to sell its BLAW-KNOX® Pavers and replacement parts through an authorized dealer network of its own choosing rather than through Volvo's pre-existing network of dealers.

34.    Blaw-Knox and Gencor have no basis to dispute GWVK's contention that it is still an authorized dealer of "Volvo Products" other than BLAW-KNOX® Pavers in Kansas, Missouri, and Oklahoma pursuant to the

Volvo CE Dealer Agreements.  However, the "Volvo Products" that GWVK is authorized to sell and service pursuant to the Volvo CE Dealer Agreements no longer include BLAW-KNOX® Pavers.  GWVK does not have (and never has had) any contractual or statutory right to purchase BLAW-KNOX® brand asphalt paving construction equipment and related parts and services from Blaw-Knox or Gencor.

35.    Neither Blaw-Knox nor Volvo intended that Blaw-Knox would purchase, assume, or succeed in any way the pre-existing contractual obligations that Volvo or any of its affiliated entities owed to any third party—including any of the contractual obligations that may be imposed upon Volvo by the Volvo CE Dealer Agreements to which GWVK is a party.  The same is true with respect to Gencor, which was not a party to the APA.

36.    The terms of the APA are unambiguous on this point.  Volvo's pre-existing contractual obligations are not among as "Acquired Assets" under the APA (or, at the very least, remaining silent on the matter), Blaw-Knox and Volvo expressly excluded these contractual obligations from the scope of what the "Purchaser" (*i.e.*, Blaw-Knox) was acquiring from Volvo.  The APA specifically excluded from the Acquired Assets "all Contracts to which [Volvo] or any of its Affiliates is a party" and defines "Contracts" to mean "any legally-binding oral or written contract, agreement, instrument, or other document." (*See id.*, §§ 1.2, 9.1.)  It is difficult to envision contractual language that more

22

clearly expresses a mutual intent to exclude the Volvo CE Dealer Agreements from the assets that Blaw-Knox purchased from Volvo pursuant to the APA.

37.     In early January 2021, a GWVK representative reportedly contacted Bob Begley (who was at the time an employee of Blaw-Knox who worked in Pennsylvania) to inquire about GWVK's desire to obtain certain BLAW-KNOX® Pavers and replacement parts along with warranty and technical support.  In response, Mr. Begley reportedly informed GWVK that Blaw-Knox was not obligated to, and would not, sell BLAW-KNOX® Pavers and replacement parts to GWVK or provide warranty support for BLAW-KNOX® Pavers to GWVK.  Such a statement by Mr. Begley would have been a correct statement of Blaw-Knox's obligations (or lack thereof) and position at the time.

### (GWVK's Threatened Claims Against Blaw-Knox and Gencor, and the Multiplicity of Actions That this Declaratory Judgment Action Will Help Plaintiffs Avoid)

38.     On June 7, 2021, approximately six months after Blaw-Knox reportedly informed GWVK that it would not sell BLAW-KNOX® Pavers and parts to GWVK, GWVK's attorneys sent Gencor correspondence styled as a "TIME-SENSITIVE SETTLEMENT DEMAND" (the "June 7, 2021 Letter").  A copy of GWVK's June 7, 2021 Letter is attached as **Exhibit J**.

39.     The June 7, 2021 Letter purported to detail "GWVK's claims against Gencor Industries, Inc. ('Gencor') related to Gencor's breach of the

[Volvo CE] Dealer Agreements and Gencor's violation of dealer protection statutes in Missouri, Kansas, and Oklahoma." (Ex. J, at p. 1.)

40. The June 7, 2021 Letter further asserted that: (i) "GWVK is the exclusive authorized dealer of Blaw-Knox products within the Missouri, Kansas, and Oklahoma territories," (ii) "[t]he [Volvo CE] Dealer Agreements . . . set forth that Volvo and its respective successors will manufacture, sell and deliver the Blaw-Knox product line to GWVK," (iii) "[o]n July 21, 2020, GWVK received a letter from Volvo CE stating that Gencor acquired Volvo's entire Blaw-Knox paver business," and (iv) "GWVK was also advised that Gencor would continue selling and servicing the Blaw-Knox paver line through the Volvo CE dealers in North America." (*Id.*)

41. According to the June 7, 2021 Letter, Blaw-Knox's decision to not sell BLAW-KNOX® Paver and parts to GWVK "was a blatant violation of" the Kansas Act, the Missouri Act, and the Oklahoma Act, respectively. (*Id.*, at p. 2.) More specifically, GWVK asserted that—under both the Kansas Act and the Missouri Act—"a supplier and their successors may not cancel a dealer unless the dealer fails 'to substantially comply with essential and reasonable requirements imposed upon the retailer by the contract if such requirements are not different from those requirements imposed on other similarly situated retailers either by their terms or in the manner of their enforcement.'" (*Id.*) With respect to the Oklahoma Act, the June 7, 2021 Letter asserted that "a

24

successor such as Gencor [and, presumably, Blaw-Knox] may not cancel a dealer unless the dealer fails to meet and maintain the successor's requirements for reasonable standards and performance objectives, so long as the successor has given the dealer reasonable standards and performance objectives that are based on other comparable market areas." (*Id.*)

42.    The June 7, 2021 Letter further alleged that "[a]s a result of Gencor's unlawful conduct, GWVK has and will continue to suffer substantial financial loss," which GWVK characterized as causing "GWVK tens of millions of dollars in damages in the future" and "leaving GWVK no choice but to take legal action to enforce its rights, including but not limited to recovery of lost profits and attorneys' fees" under the Kansas Act, the Missouri Act, and the Oklahoma Act. (*Id.*, at pp. 2-3.)

43.    The June 7, 2021 Letter demanded that Gencor pay GWVK $1,750,000.00 for what GWVK characterized as a "settlement" and stated that, if the demand was rejected, GWVK would "proceed to litigation without delay." (*Id.*, at p. 3.)    GWVK did not specify the jurisdiction—or how many jurisdictions, for that matter—in which it would pursue its alleged "claims." (*Id.*).    The state statutes referenced in the June 7, 2021 Letter were limited to the Kansas Act, the Missouri Act, and the Oklahoma Act.    However, GWVK operates construction equipment dealerships in nine states—Arkansas, Illinois, Iowa, Kansas, Missouri, Nebraska, Oklahoma, Texas, and Wisconsin.

4815-2776-0889.7

44.     On July 13, 2021, Gencor and Blaw-Knox responded through their own counsel detailing precisely how the assertions and demands set forth in the June 7, 2021 were incorrect and misplaced (the "July 13, 2021 Letter").  A copy of the July 13, 2021 Letter is attached as **Exhibit K**.

45.     The July 13, 2021 Letter made clear that GWVK either misunderstood or knowingly mischaracterized the legal relationship between and among Blaw-Knox, Gencor, GWVK, and Volvo.  Neither Blaw-Knox nor Gencor qualifies as a "successor" of Volvo under the Kansas Act, the Missouri Act, or the Oklahoma Act.  As a result, neither entity is a "supplier" to GWVK under those statutes.  Neither entity is a party to GWVK's Volvo CE Dealer Agreements.  (Ex. K, at p. 1.)   Accordingly, the July 13, 2021 Letter notified GWVK that "Gencor [and, thus, Blaw-Knox] ha[ve] no obligations to GWVK under these dealer statutes or the [Volvo CE] Dealer Agreements." (*Id*. at p. 2.)

46.     GWVK's counsel responded by correspondence dated August 24, 2021. (the "August 24, 2021 Letter"), a copy of which is attached as **Exhibit L**. The August 24, 2021 Letter cited and quoted certain definitional provisions of the Kansas Act, the Missouri Act, and the Oklahoma Act that GWVK asserts bring Gencor (and, thus, Blaw-Knox) Blaw-Knox within the purview of these laws and the obligations of the Volvo CE Dealer Agreements.

47.    The assertions in GWVK's August 24, 2021 Letter are demonstrably incorrect, both factually and legally. Nevertheless, the August 24, 2021 Letter stated GWVK's intent to "submit its attorneys' fees when it prevails" in its threatened litigation and asked that counsel for Gencor and Blaw-Knox "let [GWVK] know if [counsel] will accept service on behalf of Gencor." (Ex. K, at p. 2.) GWVK again did not specify the jurisdiction—or how many jurisdictions—in which it would pursue the threatened litigation.

48.    To date, as far as Blaw-Knox and Gencor know, GWVK has not filed suit against Blaw-Knox or Gencor with respect to the claims that GWVK threatened in its June 7, 2021 Letter and August 24, 2021 Letter.

49.    The various threats of litigation that GWVK made in its June 7, 2021 Letter and its August 24, 2021 Letter underscore the extent to which— without the declaratory judgment that they seek—Blaw-Knox and Gencor face a multiplicity of actions, in multiple forums, against GWVK and possibly other Volvo construction equipment dealers with which Volvo entered into dealer agreements that are the same or substantially similar to GWVK's Volvo CE Dealer Agreements (the "Other Potential Defendants").

50.    Indeed, the wording in both the June 7, 2021 Letter and the August 24, 2021 Letter is intentionally vague and does not make clear whether GWVK intends to pursue litigation in only a single state or in multiple forums. Instead, the implication of both is that GWVK very well may pursue its

27

imminent, threatened litigation in—at the very least—courts in the states of Kansas, Missouri, and Oklahoma.  Through both its conduct and its words, GWVK has made clear to Blaw-Knox and Gencor that it disputes the conclusion that neither Blaw-Knox nor Gencor is a party to the Volvo CE Dealer Agreements and that neither Blaw-Knox nor Gencor has any lability to GWVK under the Kansas Act, the Missouri Act, and the Oklahoma Act.

51.     By sending its June 7, 2021 and August 24, 2021 Letters, GWVK created a reasonable apprehension on the part of Blaw-Knox and Gencor that they face suit in multiple forums.  This reasonable apprehension of litigation is increased by the fact that Volvo maintained a nationwide network of construction equipment dealers to which it sold BLAW-KNOX® Pavers and parts.  Many of these dealers are among the Other Potential Defendants that could assert similarly baseless litigation against Blaw-Knox and Gencor.  The foregoing facts underscore the necessity of the declaratory judgment sought in this action and the clarity that such a judgment would provide in the face of the threat of a multiplicity of litigation that Blaw-Knox and Gencor currently face.

**(GWVK's Alleged Claims Mischaracterize
Plaintiffs' Relationship vis-à-vis Volvo and GWVK and
Constitute "Excluded Liabilities" Under the APA)**

52.     Neither Blaw-Knox nor Gencor qualifies as a "successor" of Volvo under the Kansas Act, the Missouri Act, or the Oklahoma Act.  Accordingly,

neither entity is a "supplier" under those statutes, and neither entity is obligated or bound by GWVK's Volvo CE Dealer Agreements.

53.   Contrary to the contentions in GWVK's June 7, 2021 Letter, after the Closing Date of the APA, GWVK was not (and is not) the "exclusive authorized dealer of Blaw-Knox products within the Missouri, Kansas, and Oklahoma territories" because GWVK was an authorized dealer appointed by Volvo—not Blaw-Knox or Gencor—and because neither Blaw-Knox nor Gencor acquired any pre-existing contractual liabilities and obligations from Volvo pursuant to the APA.

54.   GWVK's June 7, 2021 Letter also mischaracterizes both the legal relationship among Volvo, Blaw-Knox, and Gencor and the structure of the asset purchase memorialized in the APA.  Neither Blaw-Knox nor Gencor is a "successor" entity to Volvo (as the term "successor" is defined in the Kansas Act, the Missouri Act, and the Oklahoma Act) as neither entity purchased all or substantially all of the assets or inventory of Volvo or more than 50% of Volvo's stock.

55.   Blaw-Knox and Gencor also do not qualify as "successor" entities to Volvo under any of the relevant statutes because neither entity acquired "Volvo's entire Blaw-Knox paver business."  To the contrary, the APA makes clear that Blaw-Knox's asset purchase was limited to a discrete portion of Volvo's raw materials; component parts; manufacturing supplies; fixed

29

assembly and production assets; fabrication tooling and fixtures; training, manufacturing, and marketing collateral materials; product prototypes; and the BLAW-KNOX® brand name and related trademarks, logos, and intellectual property.

56.    In addition, GWVK's asserted claims against Blaw-Knox and Gencor are "Excluded Liabilities" within the meaning of Section 1.3(a) of the APA because the claims are "Liabilities relating to Excluded Assets." Section 1.2(k) of the APA defines "Excluded Assets" to include "Contracts to which the Seller [*i.e.,* Volvo] or any of its Affiliates is a Party." (*See id.* §§ 1.2(k), 1.3(d).)

57.    GWVK's claims are also based on its inability to purchase replacement parts for certain "Volvo Products" that it purchased from Volvo pursuant to the Volvo CE Dealer Agreement, including parts necessary for warranty repairs. These claims are "Excluded Liabilities" within the meaning of Section 1.3(d) of the APA because they constitute:

> Liabilities relating to the design, manufacture, assembly, marketing, distribution or sale of any products by [Volvo] or any of its Affiliates or any warranty claims (i) existing as of the Closing Date or (ii) arising following the Closing that relate to any product sold by [Volvo] or any of its Affiliates prior to the Closing Date.

(*Id.*, § 1.3(d).)

58.    Pursuant to the APA, Blaw-Knox and Gencor unequivocally did not purchase Volvo's contractual obligations set forth in GWVK's Volvo CE

Dealer Agreements—including any obligation to sell BLAW-KNOX® Pavers and parts to GWVK.

59.     Because neither Blaw-Knox nor Gencor is a party to GWVK's Volvo CE Dealer Agreements, neither Plaintiff was in a position to "cancel" these agreements and did not do so.  To the extent that GWVK has any claims related to equipment, parts, and technical support for BLAW-KNOX® Pavers, those claims are properly directly to Volvo.[10]

### (Blaw-Knox and Gencor Are Not Parties to a Dealer Agreement With GWVK Covered by the Kansas Act)

60.     The Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, regulates contracts for the purchase and sale of "outdoor power equipment" between "retailers" and "suppliers" that contemplate the establishment or maintenance of a retailer's location within the State of Kansas.  (*See* Kan. Stat. Ann. § 16-1302.)

61.     The Kansas Act defines "outdoor power equipment" as "machinery, equipment, attachments or repair parts therefor, used for industrial, construction, maintenance or utility purposes.  (*Id.* § 16-1302(a).)

---

[10] Notably, Section 16.1 of the Volvo CE Dealer Agreements expressly permits Volvo to discontinue a particular product or parts thereafter—such as BLAW-KNOX® Pavers—in which case "Volvo shall have no obligation to offer [GWVK] a replacement product or to compensate [GWVK] with respect to product discontinuation."  (Exs. C, D, E at § 16.1.)

62.    The Kansas Act defines a "retailer" as "any person, partnership, firm, corporation, association, or other form of business enterprise engaged in the business of: (1) [s]elling or leasing outdoor power equipment to the ultimate consumer thereof; and (2) repairing or servicing outdoor power equipment." (*Id.* § 16-1302(b).)

63.    The Kansas Act defines a "supplier" as "any person, partnership, corporation, association, or any and all other forms of business enterprise engaged in the business of manufacturing, assembly or wholesale distribution of outdoor power equipment."  (*Id.* § 16-1302(f).)  It further states as follows:

> The term "supplier" and the provisions of this act shall be interpreted liberally, with regard to the equities of the retailer, and in a manner not limited to traditional doctrines of corporate successor liability, and the obligations of a supplier hereunder shall consequently apply to any ***actual successor in interest to a supplier***, including, but not limited to, ***a purchaser of substantial assets or substantial stock, any receiver, trustee or assignee, or any surviving corporation resulting from a merger, liquidation or reorganization of the original or any intermediate successor supplier***.

(*Id.* (emphasis added).)

64.    The Kansas Act defines a "contract" subject to its provision as:

> [E]ither a written or parol agreement or arrangement for a definite or indefinite period ***between a retailer and a supplier*** which provides for the rights and obligations of the parties with respect to the purchase or sale of outdoor power equipment, and which agreement, regardless of the retailer's territorial

> scope, contemplates the establishment or maintenance by the retailer of a location within the state of Kansas at which outdoor power equipment and services for the same are displayed, and offered or demonstrated for sale.

(*Id.* § 16-1302(c).) (emphasis added)

65. Neither Blaw-Know nor Gencor qualifies as a "supplier" under the Kansas Act. Neither entity purchased or assumed the contractual obligations set forth in GWVK's Volvo CE Dealer Agreements. As a result, the Kansas Act does not regulate (or mandate that Blaw-Knox or Gencor continue) any relationship between GWVK and Blaw-Knox or Gencor.

66. As the APA makes clear, Blaw-Knox was not the "purchaser of substantial assets or substantial stock" from Volvo. As a result, Blaw-Knox is not an "actual successor in interest" to Volvo as that term is defined in the Kansas Act. Instead, Blaw-Knox purchased only a discrete portion of Volvo's raw materials; component parts; manufacturing supplies; fixed assembly and production assets; fabrication tooling and fixtures; training, manufacturing, and marketing collateral materials; product prototypes; and the BLAW-KNOX® brand name and related trademarks, logos, and intellectual property. (*See* Ex. A, APA § 1.1.)

67. This purchase excluded Volvo's pre-existing contractual obligations under the Volvo CE Dealer Agreements. (*See id.*, § 1.2.) The purchase also expressly excluded all "Retained Inventory." The APA defines

33

"Retained Inventory" to mean any "work in process, raw materials, component parts, production and non-production supplies and other inventory that [Volvo] needs in order to complete asphalt pavers that [Volvo] is in the process of manufacturing as of the date of this Agreement, *and finished asphalt pavers and asphalt pavers that are in the process of being manufactured by [Volvo] as of the date of this Agreement*." (*See id.*, §§ 1.2, 9.1 (emphasis added).)

68.   Blaw-Knox and Gencor do not meet the statutory definition of "supplier" set forth in the Kansas Act.  They have not entered into or assumed any obligations under a "contract" subject to the Kansas Act.  Blaw-Knox and Gencor are therefore not subject to any liability under the Kansas Act for their refusal to sell BLAW-KNOX® Pavers and parts to GWVK.

**(Blaw-Knox and Gencor Are Not Parties to a
Dealer Agreement With GWVK Covered by the Missouri Act)**

69.   The Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.,* regulates contracts between "manufacturer[s], wholesaler[s], and distributor[s]" and "retailer[s]" for the sale and repair of industrial, maintenance, and construction power equipment. (*See* Mo. Rev. Stat. § 407.753(1).)

70.    The Missouri Act defines "equipment" as "industrial, maintenance, and construction power equipment used for industrial, maintenance and construction applications and repair parts therefor."  (*Id.*)

71.    The Missouri Act defines a "retailer" as "any person, firm, or corporation engaged in the business of selling and repairing industrial, maintenance and construction power equipment used for industrial, maintenance and construction applications and repair parts therefor."  (*Id.*)

72.    The Missouri Act defines a "manufacturer, wholesaler, or distributor" as any "manufacturer, wholesaler or distributor of industrial, maintenance, and construction power equipment used for industrial, maintenance and construction applications and repairs parts therefor who enters into a written or parol contract" with a "retailer."  (*Id.*)  The Missouri Act further provides:

> The obligations of any wholesaler, manufacturer or distributor created by the provisions of [the Missouri Act] apply to any successor in interest or assignee of that wholesaler, manufacturer, or distributor.  A "successor in interest" includes any purchaser of ***substantially all of the assets or over fifty percent of the stock, any surviving corporation resulting from a merger or liquidation, any receiver, or any trustee of the original wholesaler, manufacturer or distributor***.

(*Id.* § 407.754 (emphasis added).)

73.    The Missouri Act defines a contract subject to its provisions as:

35

> [A] written or parol contract [between a manufacturer, wholesaler, or distributor and] any person, firm, or corporation engaged in the business of selling and repairing industrial, maintenance and construction power equipment used for industrial maintenance and construction applications and repair parts therefor [*i.e.,* a "retailer"], whereby such retailer agrees to maintain a stock of parts or complete or whole machines or attachments . . . .

(*Id.* § 407.753(1).)

74.    Neither Blaw-Know nor Gencor qualifies as a "manufacturer, wholesaler, or distributor" of GWVK under the Missouri Act because neither entity satisfies a condition precedent to coverage.  Specifically, neither entity is a party to a "written or parol contract with [GWVK for the sale and repair] of industrial, maintenance and construction power equipment used for industrial maintenance and construction applications and repair parts therefor, whereby [GWVK] agrees to maintain a stock of parts or complete or whole machines or attachments."  (*See id.* § 407.753(1)).  The APA between Volvo and Blaw-Knox expressly excluded GWVK's Volvo CE Dealer Agreements from the scope of the purchased assets, and GWVK cannot seriously contend that it has any "written or parol contract" with Blaw-Knox or Gencor for the sale or repair of BLAW-KNOX® Pavers and parts.

75.    Blaw-Knox and Gencor also do not qualify as "successors in interest" of Volvo that would otherwise be regulated by the Missouri Act. Neither entity: (i) purchased "substantially all of [Volvo's] assets or over fifty

36

percent of [Volvo's] stock"; (ii) qualifies as a "surviving corporation [of Volvo] resulting from a merger or liquidation"; or (iii) is a "receiver or . . . trustee of [Volvo]." (*See id.* § 407.754.).

76.     Instead, through the APA, Blaw-Knox purchased only a discrete portion of Volvo's raw materials; component parts; manufacturing supplies; fixed assembly and production assets; fabrication tooling and fixtures; training, manufacturing, and marketing collateral materials; product prototypes; and the BLAW-KNOX® brand name and related trademarks, logos, and intellectual property.  (*See* Ex. A, APA § 1.1.)

77.     This purchase excluded Volvo's pre-existing contractual obligations under the Volvo CE Dealer Agreements.  (*See id.*, § 1.2.)  The purchase also expressly excluded all "Retained Inventory."  The APA defines "Retained Inventory" to mean any "work in process, raw materials, component parts, production and non-production supplies and other inventory that [Volvo] needs in order to complete asphalt pavers that [Volvo] is in the process of manufacturing as of the date of this Agreement, ***and finished asphalt pavers and asphalt pavers that are in the process of being manufactured by [Volvo] as of the date of this Agreement***."  (*See id.*, §§ 1.2, 9.1. (emphasis added))

78.     Blaw-Knox and Gencor do not meet the statutory definition of a "manufacturer, wholesaler, or distributor" set forth in the Missouri Act.  They

have not entered into or assumed any obligations under a contract subject to the Missouri Act. Blaw-Knox and Gencor therefore have no liability under the Missouri Act for their refusal to sell BLAW-KNOX® Pavers and parts to GWVK.

### (Blaw-Knox and Gencor Are Not Parties to a Dealer Agreement With GWVK Covered by the Oklahoma Act)

79.    The Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.,* regulates contracts for the purchase or sale of "equipment" or "repair parts" between "dealers" and "suppliers." (*See* Okla. Stat. Tit. 15, § 245.)

80.    The Oklahoma Act defines "equipment" as "(a) all-terrain vehicles, utility task vehicles and recreational off-highway vehicles, in each case, regardless of how used" and "(b) other machinery, equipment, implements or attachments therefore, used for or in connection with [*inter alia*] the following purposes: . . . (4) industrial, construction, maintenance, mining or utility activities or applications." (*Id.* § 245(7).)

81.    The Oklahoma Act defines "repair parts" as "all parts related to the repair of equipment, including superseded parts." (*Id.* § 245(15).)

82.    The Oklahoma Act defines a "dealer" as "any person primarily engaged in the business of: (a) selling or leasing equipment or repair parts to

38

the ultimate consumer, and (b) repairing or servicing equipment." (*Id.* § 245(3).)

83. The Oklahoma Act defines a "supplier" as "any person engaged in the business of manufacturing, assembly or wholesale distribution of equipment or repair parts." (*Id.* § 245(21).) It further states as follows:

> The term ["supplier"] shall also include any successor in interest, including any receiver, trustee, liquidator, assignee, purchaser of assets or stock or a surviving stock, or a surviving corporation resulting from a merger, liquidation, or reorganization of the original supplier. [And that] ***[p]urchasers of all, or substantially all, of the inventory of a supplier or a supplier's division or product line*** will constitute a purchaser of all or substantially all of the supplier's assets[.]

(*Id.* (emphasis added).)

84. The Oklahoma Act defines a "dealer agreement" as:

> [E]ither an oral or written agreement or arrangement for a definite or indefinite period between a dealer and a supplier that provides for the rights and obligations of the parties with respect to the purchase or sale of equipment or repair parts. Notwithstanding the foregoing, if a dealer has more than one business location covered by the same dealer agreement, the requirements of the [Oklahoma Act] will be applied to the repurchase of a dealer's inventory at a particular location upon the closing of such location, unless the closing of the location occurs without the permission of the supplier[.]

(*Id.* § 245(4).)

85.     Neither Blaw-Knox nor Gencor qualifies as a "supplier" under the Oklahoma Act because neither has entered into a "dealer agreement" with GWVK within the meaning of Section 245(4) of the Oklahoma Act.  The APA between Volvo and Blaw-Knox expressly excluded GWVK's Volvo CE Dealer Agreements from the scope of purchased assets, and GWVK cannot seriously contend that it has any "oral or written agreement" with Blaw-Knox or Gencor "that provides for the rights and obligations of the parties with respect to the purchase or sale of" BLAW-KNOX® Pavers and parts.

86.     Blaw-Knox and Gencor also do not qualify as "successors in interest" of Volvo that would otherwise be regulated by the Oklahoma Act.  As the APA makes clear, neither entity purchased or acquired ***all or substantially all*** *of:* (i) Volvo's *"**inventory**"*; (ii) a Volvo "division"; or (iii) a Volvo "product line."  Likewise, neither entity qualifies as a "receiver, trustee, liquidator, assignee, or surviving corporation resulting from a merger, liquidation or reorganization of Volvo.

87.     Blaw-Knox purchased only a discrete portion of Volvo's raw materials; component parts; manufacturing supplies; fixed assembly and production assets; fabrication tooling and fixtures; training, manufacturing, and marketing collateral materials; product prototypes; and the BLAW-KNOX® brand name and related trademarks, logos, and intellectual property. (*See* Ex. A, APA § 1.1.)

40

88.    This    purchase    excluded    Volvo's    pre-existing    contractual obligations  under  the  Volvo CE  Dealer Agreements.   (*See id.*, § 1.2.)   The purchase also expressly excluded all "Retained Inventory."  The APA defines "Retained Inventory" to mean any "work in process, raw materials, component parts, production and non-production supplies and other inventory that [Volvo] needs in order to complete asphalt pavers that [Volvo] is in the process of manufacturing  as  of  the  date  of  this  Agreement, ***and finished asphalt pavers  and  asphalt  pavers  that  are  in  the  process  of  being manufactured by [Volvo] as of the date of this Agreement***."   (*See id.*, §§ 1.2, 9.1 (emphasis added).)

89.    Blaw-Knox and Gencor do not meet the statutory definition of a "supplier" under the Oklahoma Act.  They have not entered into or assumed any  obligations  under  a  "dealer  agreement"  subject  to  the  Oklahoma  Act. Blaw-Knox and Gencor therefore have no liability under the Oklahoma Act for their refusal to sell BLAW-KNOX® Pavers and parts to GWVK.

**(The Lanham Act Gives Blaw-Knox Full Discretion to Determine Whether to License the BLAW-KNOX® Mark and to Whom)**

90.    The  BLAW-KNOX®  Mark  is  the  subject  of  registrations  (the "BLAW-KNOX® Trademark Registrations") on the Principal Register of the U.S. Patent & Trademark Office (the "PTO").  The BLAW-KNOX® Trademark

41

Registration were purchased by Blaw-Knox pursuant to the APA, include the

following:

| BLAW-KNOX® Mark | Reg. #/ Reg. Date/ Status | Goods and Services |
|---|---|---|
| BLAW-KNOX | 1,515,147/ 12-6-1988/ Fourth Renewal Due: 12-20-2028 | Roadway construction and paving machines, namely, pavers, wideners and grading and sloping machines; mill machinery, namely rolling mills, ladles, ladle pouring units, ladle feeders, furnace and ladle lining machines, [ lance hoists, dust recovery machines, ] grapples, buckets, scoops, tongs, concrete buckets and hooks for material handling apparatus, travelers, carriages, traveling platforms, ramps, bridges and screeds and parts for the foregoing. Int. Cls.: 7, 12 Prior U.S. Cls.: 2, 13, 19, 23, and 26 |
| BLAW-KNOX **BLAW-KNOX** | 931,579/ 4-4-1972/ Fifth Renewal Due: 4-24-2022 | [Metal sheet and strip processing lines and parts thereof and related accessories and material handling apparatus; cold drawing lines and parts thereof and related accessories and material handling apparatus; pipe, tube, bar, rod and stretch reducing mills and parts thereof and related accessories and material handling apparatus; ] [ rolling mills and parts thereof ] [ and related accessories and material handling apparatus; ] [ ladles, ladle pouring units, ladle feeders, furnace and ladle lining machines, ] [ charging machines, ] [ lance hoists, ] [ dust recovery units and parts thereof; ] [ grapples, buckets, scoops, tongs, concrete buckets and hooks for |

42

|  |  | material handling apparatus ] [ soot blowers, boiler wall deslaggers, pump governors, machines for mixing and pumping slurries for cleaning boiler tubes and valve actuators; industrial and chemical manufacturing plants sold as a unit and parts thereof; plants and parts thereof for the control and abatement of water pollution, air pollution and waste materials comprised of machines for the mechanical and/or biochemical treatment of air, water and solid matters; ] roadway construction and paving machines; namely, pavers, roadwideners [ spreaders, finishers, mixers, subgraders, ] base pavers, [ trench rollers, and ] grade and slope machines; [ vehicle mounted boom cranes; weighing batcher plants; cement plants; ] [ travelers, carriages, traveling platforms, ramps, bridges and screens and tunnel agitators for concrete construction work; and unitary processing plants and parts thereof for processing food, chemical, pharmaceutical, petroleum and petro-chemical products ]<br>Int. Cls.: 6, 9, 11, and 12<br>Prior U.S. Cls.: 2, 12, 19, 23, 26, and 34 |
|---|---|---|

91.     Effective October 1, 2020, pursuant to the APA, Blaw-Knox purchased the BLAW-KNOX® Mark, including the BLAW-KNOX® Trademark Registrations, from Volvo.  The assignment to Blaw-Knox of the BLAW-KNOX® Trademark Registrations was recorded with the PTO on October 12, 2020 by way of the recordation form attached as **Exhibit M**.

92.     As the owner of the BLAW-KNOX® Mark and the BLAW-KNOX® Trademark Registrations, Blaw-Knox has the right to control the licensure to and use of the BLAW-KNOX® Mark and the BLAW-KNOX® Trademark Registrations by dealers.  Numerous federal court precedents recognize the importance of franchisor control over franchisee operations to the success of a franchise system.  The relationship between Blaw-Knox and its authorized dealers is not a "franchise" within the meaning of federal and state law. However, these dealer relationships are similar in that—like a franchise system—a trademark is their "cornerstone." *Susser v. Carvel Corp.,* 206 F. Supp. 636, 640 (S.D.N.Y. 1962), *aff'd*, 332 F.2d 505 (2d Cir. 1964).  In a franchise system, "uniformity of product and control of its quality and distribution . . . causes the public to turn to franchise stores for the product." *Id.* Similarly, in the case of BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark, "uniformity of product and control of its quality and distribution … causes the public to turn to [independent dealers licensed to use the BLAW-KNOX® Mark] for the product."

93.     Supervision and control of authorized dealers licensed to use the BLAW-KNOX® Mark benefits the dealers.  The dealers benefit by association with a network of independent dealers whose operations are consistent with the core values associated with the BLAW-KNOX® Mark.

44

94.     The need for Blaw-Knox to control the quality and uniformity associated with the BLAW-KNOX® Mark is expressly recognized in the Lanham Act.  The Lanham Act prohibits any use of the federally registered BLAW-KNOX® Mark by anyone except Blaw-Knox and a "related company." (15 U.S.C. §§ 1051, 1055.)  Section 45 defines "related company" as "any person whose use of a mark *is controlled by*" the trademark owner "*with respect to the nature and quality of the goods or services or in connection with which the mark is used*."  (*Id.* § 1127 (emphasis added).)  Section 45 thus grants BLAW-KNOX® the *right* to control the quality of goods and services associated with the Blaw-Knox Marks.  In fact, Section 45 imposes upon Blaw-Knox an *affirmative duty* to do so.  *Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 387 (5th Cir. 1977).

95.     Under Section 45 of the Lanham Act, "it is the *control* of quality that a trademark holder is entitled to maintain.'" *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (*quoting El Greco Leather Prods. Co.* v. *Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986)).  *See also Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 478 F. Supp. 243, 279-80 (E.D. Pa. 1979), *aff'd*, 637 F.2d 105 (3d Cir. 1980); *Gilderhus v. Amoco Oil Co.*, 1980-1 Trade Cas. (CCH) ¶ 63,650 (D. Minn. 1980).

96.     Any court order directing that GWVK is authorized to sell BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark or to call itself an

45

authorized dealer of BLAW-KNOX® Pavers—which is the precise order GWVK is threatening to pursue—would deprive Blaw-Knox of its right under Section 45 of the Lanham Act to control the quality of goods and services associated with the BLAW-KNOX® Mark.

97.    In addition to granting Blaw-Knox the *right* to control the quality of goods and services associated with the BLAW-KNOX® Mark, Section 45 of the Lanham Act states congressional intent to expressly preempt inconsistent state law: "The intent of this chapter is . . . to protect registered marks used in [interstate] commerce from interference by State, or territorial legislation . . . ." (15 U.S.C. § 1127.)

98.    GWVK's invocation of the Kansas Act, the Missouri Act, and the Oklahoma Act runs directly contrary to the congressional intent expressed in Section 45 of the Lanham Act.  Permitting those state statutes to deprive Blaw-Knox of the ability to control the quality and uniformity associated with the BLAW-KNOX® Mark would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the Lanham Act.  *Hines v. Davidowitz*, 312 U.S. 52, 67-68 (1941).  If any state law were interpreted or applied so as to force Blaw-Knox to license or sublicense the BLAW-KNOX® Mark to GWVK or the Other Potential Defendants, such a law would—by virtue of its inconsistency with the Lanham Act — frustrate a

federal purpose and therefore be preempted by the Supremacy Clause. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 493 (1987).

99.     The fact that GWVK and the Other Potential Defendants were previously licensed to use the BLAW-KNOX® Mark by the prior trademark owner, Volvo, does not mean that GWVK or the Other Potential Defendants have the right to continue using the BLAW-KNOX® Mark—or to continue to purchase BLAW-KNOX® Pavers manufactured under the BLAW-KNOX® Mark—without the express consent of the current trademark owner, Blaw-Knox.

100.    By correspondence dated July 21, 2020, Volvo notified GWVK that BLAW-KNOX® Pavers were being removed from the scope of the "Volvo Products" covered by GWVK's Volvo CE Dealer Agreements and that "Blaw-Knox and the Blaw-Knox diamond logo" were being removed from the "Trademarks" that the Volvo CE Dealer Agreement licensed GWVK to use. Effective October 1, 2020, upon the closing of the APA, GWVK thus ceased to be an authorized dealer of BLAW-KNOX® Pavers and an authorized licensee of the BLAW-KNOX® Mark.

101.    Following the October 1, 2020 effective date of the APA, neither GWVK nor any Other Potential Defendant is entitled to a license to use the BLAW-KNOX® Mark or to distribution rights to BLAW-KNOX® Pavers identified with the BLAW-KNOX® Mark.

## COUNT I

## (NO BREACH OF CONTRACT)

102.   Blaw-Knox and Gencor hereby reallege and incorporate by reference the allegations of paragraphs 1 through 101 of the Complaint.

103.   Blaw-Knox and Gencor are not parties to GWVK's Volvo CE Dealer Agreements and have no contractual liability to GWVK.  Volvo is the proper party to the Volvo CE Dealer Agreements and remains primarily liable to GWVK under the Volvo CE Dealer Agreements.

104.   Neither Blaw-Knox nor Gencor has breached any provision of GWVK's Volvo CE Dealer Agreements or any implied duty of good faith and fair dealing as a result of their refusal to sell BLAW-KNOX® Pavers and parts to GWVK.

105.   The implied duty of good faith and fair dealing does not apply to Blaw-Knox or Gencor under the Volvo CE Dealer Agreements.

106.   Even if Blaw-Knox or Gencor were parties to GWVK's Volvo CE Dealer Agreements, the implied duty of good faith and fair dealing cannot be used to override the express provisions of the Volvo CE Dealer Agreements, including Section 16.1.

107.   An actual, justiciable controversy exists between Blaw-Knox and Gencor, on the one hand, and GWVK, on the other hand, with respect to whether Blaw-Knox and Gencor are parties to GWVK's Volvo CE Dealer

48

Agreements and whether Blaw-Knox or Gencor have breached the Volvo CE Dealer Agreements or the implied duty of good faith and fair dealing as a result of their refusal to sell BLAW-KNOX® Pavers and parts to GWVK.

108. The parties' respective positions with respect to the contractual obligations set forth in the Volvo CE Dealer Agreements have created doubt as to the rights and legal relations between them.

109. The parties' respective positions with respect to the contractual obligations set forth in the Volvo CE Dealer Agreements have established that Blaw-Knox and Gencor are likely to face a multiplicity of litigation in various forum states that this declaratory judgment action will help resolve efficiently and uniformly.

## COUNT II

### (NO STATUTORY VIOLATION)

110. Blaw-Knox and Gencor hereby reallege and incorporate by reference the allegations of paragraphs 1 through 109 of the Complaint.

111. By virtue of the provisions of the July 30, 2020 Asset Purchase Agreement by and between Volvo and BK Acquisition Corporation (as amended on September 28, 2020 to substitute Blaw-Knox as the purchasing entity in place of BK Acquisition Corporation), the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, the Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev.

Stat. § 407.753 *et seq.,* and the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.*, do not apply to Blaw-Knox or Gencor with respect to the sale of BLAW-KNOX® Pavers and parts to GWVK.

112.  Neither Blaw-Knox nor Gencor has violated the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, the Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.,* or the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.*, by refusing to sell BLAW-KNOX® Pavers and Parts to GWVK.

113.  By refusing to sell BLAW-KNOX® Pavers and parts to GWVK, neither Blaw-Knox nor Gencor has undertaken an unlawful termination, cancellation, or non-renewal of GWVK's Volvo CE Dealer Agreements in violation of the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, the Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.,* or the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.*

114.  Neither Blaw-Knox nor Gencor has any obligation under the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, the Missouri Industrial Maintenance and Construction Power

Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.,* or the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.*, to repurchase any BLAW-KNOX® brand asphalt paving construction equipment, parts, or accessories inventory currently held by GWVK.

115.   An actual, justiciable controversy exists between Blaw-Knox and Gencor, on the one hand, and GWVK, on the other hand, with respect to whether Blaw-Knox and Gencor are regulated by the Kansas Act, the Missouri Act, and the Oklahoma Act and whether Blaw-Knox or Gencor have violated these statutes as a result of their refusal to sell BLAW-KNOX® Pavers and related parts and services to GWVK.

116.   The parties' respective positions with respect to these statutory obligations have created doubt as to the rights and legal relations between them.

117.   The parties' respective positions with respect to these statutory obligations have established that Blaw-Knox and Gencor are likely to face a multiplicity of litigation in various forum states that this declaratory judgment action will help resolve efficiently and uniformly.

4815-2776-0889.7

## COUNT III

## (TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT)

118. Blaw-Knox and Gencor hereby reallege and incorporate by reference the allegations of paragraphs 1 through 117 of the Complaint.

119. Blaw-Knox, as the owner of the BLAW-KNOX® Mark and the BLAW-KNOX® Trademark Registrations, has the absolute right and indeed the affirmative duty, pursuant to Section 45 of the Lanham Act, to control the quality and uniformity of the goods and services associated with the BLAW-KNOX® Mark and the identity of independent dealers licensed to use the BLAW-KNOX® Mark.

120. The fact that GWVK and the Other Potential Defendants previously licensed the BLAW-KNOX® Mark from Volvo before Volvo sold the BLAW-KNOX® Mark to Volvo does not mean that GWVK and the Other Potential Defendants have the right to continue to use the BLAW-KNOX® Mark—or to continue to purchase BLAW-KNOX® Pavers and parts identified with the BLAW-KNOX® Mark—without the express consent of Blaw-Knox. Nor does it mean that Blaw-Knox *must* license the BLAW-KNOX® Mark to GWVK and the Other Potential Defendants.

121. Blaw-Knox has no obligation under the Lanham Act to license the BLAW-KNOX® Mark to GWVK and the Other Potential Defendants.  Any

52

unauthorized use of the BLAW-KNOX® Mark by GWVK and the Other Potential Defendants would constitute trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and would cause or threaten to cause irreparable harm to Blaw-Knox, which lacks an adequate remedy at law.

## COUNT IV

## (LANHAM ACT PREEMPTION OF INCONSISTENT STATE LAW)

122. Blaw-Knox and Gencor hereby reallege and incorporate by reference the allegations of paragraphs 1 through 121 of the Complaint.

123. Any state law requirement that the BLAW-KNOX® Mark be licensed to GWVK and the Other Potential Defendants would be preempted by the Supremacy Clause and the Lanham Act.

## PRAYER FOR RELIEF

WHEREFORE, Blaw-Knox and Gencor respectfully request and pray that the Court enter judgment in their favor as follows:

1. Pursuant to Count I, a declaratory judgment that Blaw-Knox and Gencor have no liability to GWVK for breach of contract or breach of the implied duty of good faith and fair dealing with respect to the Volvo CE Dealer Agreements;

2.      Pursuant to Count II, a declaratory judgment that Blaw-Knox and Gencor have no liability to GWVK under the Kansas Outdoor Power Equipment Dealership Act, Kan. Stat. Ann. § 16-1301 *et seq.*, the Missouri Industrial Maintenance and Construction Power Equipment Act, Mo. Rev. Stat. § 407.753 *et seq.,* or the Oklahoma Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. Tit. 15, § 244 *et seq.*;

3.      Pursuant to Count III, a declaratory judgment that Blaw-Knox and Gencor have the right under the Lanham Act not to license the BLAW-KNOX® Mark to GWVK and the Other Potential Defendants and not to supply GWVK and the Other Potential Defendants with BLAW-KNOX® Pavers identified with BLAW-KNOX® Mark;

4.      Pursuant to Count IV, a declaratory judgment that the Lanham Act would preempt any requirement of state law that the BLAW-KNOX® Mark be licensed to GWVK and the Other Potential Defendants or that GWVK and the Other Potential Defendants be supplied with BLAW-KNOX® Pavers identified with BLAW-KNOX® Mark;

5.      An award to Blaw-Knox and Gencor of their costs and attorneys' fees in an amount to be set forth in the Court's final order as the "prevailing parties" in the action pursuant to Mo. Rev. Stat. § 407.755 and Kan. Stat. Ann. § 16-1308; and

6.    Such further relief in favor of Blaw-Knox and Gencor as is necessary and proper pursuant to 28 U.S.C. § 2202.

## **DEMAND FOR JURY TRIAL**

To the extent this Complaint presents any ***genuine*** disputes as to issues of ***material*** fact, Plaintiffs Blaw-Knox and Gencor respectfully request trial by jury on all issues contained in this Complaint for which it is available.

4815-2776-0889.7

Dated:  January 28, 2022

Respectfully submitted,

BLAW-KNOX CORPORATION and
GENCOR INDUSTRIES, INC.

By: /s Katlin C. Cravatta
        Counsel

Katlin C. Cravatta
FOLEY & LARDNER LLP
301 East Pine Street, Suite 1200
Orlando, Florida 32801
P. (407) 423-7656
F. (407) 648-1743
E. kcravatta@foley.com

Michael J. Lockerby*
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007
P. (202) 672-5300
F. (202) 672-5399
E. mlockerby@foley.com

Timothy J. Patterson*
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
P. (414) 271-2400
F. (414) 297-4900
E. tjpatterson@foley.com

*Counsel for Plaintiffs,
Blaw-Knox Corporation
and Gencor Industries, Inc.*

***pro hac vice*** applications
forthcoming

4815-2776-0889.7